**MISSOURI FORGE, INC.,**
Employer–Appellant,

v.

**Joie L. TURNER, Claimant–Respondent,**

and

**Division of Employment Security,
Respondent.**

No. 25404.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 30, 2003.

---

Dale E. Nunnery, Swindle & Nunnery, P.C., Doniphan, for appellant.

No Appearance for respondent.

PHILLIP R. GARRISON, Judge.

Missouri Forge, Inc. ("Appellant") appeals the decision of the Labor and Industrial Relations Commission (the "Commission") to grant unemployment benefits to Joie L. Turner ("Claimant"). The dispositive issue is whether Claimant quit his job at Missouri Forge with "good cause." We hold that the record does not support a finding that Claimant quit his job with "good cause," and that the Commission erred in awarding Claimant unemployment benefits. We reverse the Commission's ruling.

In November 1991, Claimant began work as a "hammer-machine operator" for Missouri Forge, Inc. in Doniphan, Missouri. In 1996, 1998, and 1999, Claimant suffered injuries at work, although the record is silent as to the nature of those injuries. In 2001, Claimant began to experience severe back pain, and was referred by his family physician to a neurosurgeon in Cape Girardeau, Missouri. Claimant

underwent a "discogram" during a previously scheduled vacation. On July 30, 2001, the day Claimant was to return to work from vacation, he informed Appellant that he had undergone a medical procedure for his back pain, and subsequently provided Appellant with a note from his neurosurgeon stating that he was disabled for two weeks. Without returning to work, Claimant underwent a double fusion of his "L–4 and L–5" vertebrae on September 20, 2001, and informed Appellant that he would need three to six months to recover.

Claimant, who was aware of Appellant's policy that employees who did not report for work or "call in" for three consecutive workdays were "self-terminat[ed]," remained in contact with Appellant with updates on his recovery. Claimant testified that after his back surgery, he was in considerable pain, but still checked in with Appellant on a regular basis. Claimant's last regular contact with Appellant concerning his progress was on January 28, 2002.

On April 10, 2002, Claimant notified Appellant that his neurosurgeon had cleared him for "light duty," which meant that he had numerous restrictions on his work activities. Appellant informed Claimant that there were no jobs available at Missouri Forge that Claimant would be able to perform. Claimant then filed a claim for unemployment benefits with the Missouri Division of Employment Security ("DES"). Appellant contested this claim, and DES found that Claimant quit his job without "good cause." DES ruled that according to § 288.050.1(1)[1] an employee who quits

his or her job without "good cause" is not entitled to unemployment benefits.

Claimant appealed DES's decision on April 30, 2002 to the DES Appeals Tribunal (the "Tribunal"). The Tribunal held a hearing by telephone conference on May 24, 2002, but Appellant's representative was not available to testify at that hearing, and the Tribunal received only Claimant's evidence.[2] The Tribunal ruled that Claimant quit his job for personal reasons without "good cause," and upheld DES's decision to deny benefits. The Tribunal also modified the termination date to January 28, 2002, because Claimant failed to maintain regular contact with Appellant after that date.

Claimant appealed the Tribunal's decision to the Commission. On December 16, 2002, the Commission reversed the findings of DES and the Tribunal, ruling that "good cause" existed for Claimant to quit his job. The Commission specifically found that Claimant's back injury was a work-related injury, in contrast to the previous findings that Claimant quit his job for personal reasons. Because the Commission found Claimant had "good cause" to quit his job, it granted him unemployment benefits. Appellant now appeals the Commission's decision.

Initially, we note that Claimant failed to file a brief with this court. While this does not violate any rules or statutes, it is an imposition on the court that leaves us without the benefit of Claimant's research and insight. While we are required to decide the case regardless of whether Claimant prepares a brief, we are not to become an

---

1. References to statutes are to RSMo (2000) unless otherwise indicated.

2. The Tribunal referee initiated a telephone call to Appellant's representative to conduct the hearing. Appellant's representative was not immediately available, and the referee was placed on hold. After allowing a short amount of time to pass without hearing from Appellant's representative, the referee disconnected the telephone call. The hearing proceeded with Claimant being the only party participant.

advocate for Claimant. *Rhodes v. Blair*, 919 S.W.2d 561, 563, 565 (Mo.App. S.D. 1996).

▮ Appellant's first point on appeal states that the Commission erred in reversing the Tribunal because there was insufficient competent evidence in the record to find that Claimant quit his job for good cause. The standard of review when reviewing a decision by the Commission on unemployment benefits is contained in § 288.210, which provides that a court may reverse, modify, set aside, or remand a decision by the Commission on the following grounds and no other:

(1) That the [C]ommission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the [C]ommission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

The factual findings of the Commission, if supported by competent and substantial evidence, in the absence of fraud, shall be conclusive and our review shall be limited to questions of law. *Lashea v. Fin–Clair Corp.* , 30 S.W.3d 237, 240 (Mo.App. E.D. 2000).

▮ It is uncontroverted that Claimant quit his job. The issue is whether Claimant quit his job for "good cause." *Lashea* defines "good cause" as an "objective standard of what a reasonable person would do in the same or similar circumstances." *Id.* at 241. Whether Claimant quit his job for good cause is a question of law that we review independently of the Commission's determination. *Baker v. Midway Enterprises, Inc.*, 78 S.W.3d 188,

193 (Mo.App. W.D.2002). Also it is an issue upon which Claimant bears the burden of proof. *Id.* at 192.

Claimant's back injury alone was not sufficient "good cause" to quit his job and receive unemployment benefits. "The good cause necessary to support an award of unemployment benefits where an employee voluntarily quits must be *cause attributable to her work or her employment.*" *Id.,* (quoting *Quik 'N Tasty Foods, Inc. v. Division of Employment Sec.,* 17 S.W.3d 620, 626 (Mo.App. W.D. 2000)) (emphasis in original). To have good cause to quit his job and receive unemployment benefits, Claimant must have proved that his injury was causally linked to his employment at Missouri Forge.

▮ For the purpose of receiving unemployment compensation benefits, where the causal connection between a claimant's work and the medical reason relied upon for establishing good cause for quitting is not within the common knowledge or experience of a layperson, expert medical evidence is required to establish the causal connection. *Kansas City Power & Light v. Searcy,* 28 S.W.3d 891, 895 (Mo.App. W.D.2000). We are directed to no competent evidence in the record here establishing a causal relationship between Claimant's physical condition that caused him to quit, and his employment with Appellant. Our own review of the record likewise fails to disclose such evidence. The Commission's decision fails to provide any guidance as to how it reached the legal conclusion that the Claimant's back injury was causally related to his employment at Missouri Forge. Because of the lack of competent evidence in the record to warrant the Commission's award, the Commission's decision must, therefore, be, and is hereby,

reversed,[3] and the case is remanded with directions to reinstate the ruling of the Tribunal.

BARNEY, P.J., and PREWITT, J., concur.

3. Because of the result we reach in response to Appellant's first point, the second point on appeal need not be addressed.